*309 OPINION OF THE COURT
Seymour Schwartz, J.
Landlord sues two tenants in separate nonpayment proceedings for rent and Con Ed electric charges claimed under lease. Tenant Robinson is an architect and tenant Hand a businessman.
Tenants reside in separate premises pursuant to real estate board form loft leases in a loft building at 67 Murray Street, New York City. The premises were rented for 10 years as "A studio and for no other purpose”. It is tenants’ contention that when they executed the lease it was their intention to reside in the premises, that this was made known to landlord and relying thereon they spent considerable sums to remodel their space.
Tenants are not certified artists as defined in section 276 of the Multiple Dwelling Law and so are not covered by the beneficent provisions of sections 277 and 278 of the Multiple Dwelling Law which provide for certain residential occupancy exceptions not applicable here.
Tenants contend that together with other tenants who reside in the premises, the loft building is actually a multiple dwelling as defined in subdivision 7 of section 4 of the Multiple Dwelling Law: "occupied as the residence or home of three or more families living independently of each other.” It follows, they allege, that since landlord failed to obtain a certificate of occupancy changing the building use from commercial to residential, they are now precluded from collecting rent. (Multiple Dwelling Law, § 325, subd 2; Administrative Code of City of New York, § D26-41.21.)
The recent increased utilization of loft space for residential purposes or for combination creative/business and residential purposes outside the ambit of sections 276, 277 and 278 of the Multiple Dwelling Law has produced a twilight zone not readily cognizable in the categories and precedents of usual landlord-tenant law. While in the future legislation may define the rights and duties of landlord and tenant in such a setting, until that is effected the courts must clear a path, albeit with measured steps.
There was testimony that tenants informed landlord they intended to use the premises, at least in part, for residential purposes. The court finds that the landlord knew this or deliberately sought to avoid eliciting further information *310 which would confirm this. The court also finds that tenants were aware from the lease and the surrounding circumstances of the negotiations that the right to reside in the premises was, at the least, questionable. Likely, this is the pattern in most such loft rentals today. Even sophisticated parties cannot be certain of their rights and duties in such circumstances and therefore avoid particularity regarding residence, being content to settle for the limbo of legal ambiguity.
If tenants’ defense is valid they need not pay any rent so long as landlord fails to obtain a residential certificate of occupancy.
Tenants did not obtain the written consent of landlord as required by the lease nor did they file plans or secure approval for the remodeling from the requisite city agencies. (Multiple Dwelling Law, § 300.) The extensive remodeling was performed by tenants with complete knowledge of the risk. They had full opportunity to know and evaluate the effect of legal uncertainty in concluding their bargain and for this reason they do not come before the court with clean hands. For the court to invoke the equitable principle of estoppel against landlord it must be shown that the claimed injured, party acted in good faith. (Chast Realty Corp. v Frost, 198 Misc 814; 21 NY Jur, Estoppel, § 62.) This is not the case here. Tenants cannot by their own illegal conduct, lacking a permit from the Department of Buildings, confer residential status upon themselves by converting a commercial certificate of occupancy to a multiple dwelling requiring a residential certificate of occupancy. Nor may landlord waive an illegal use of premises by a tenant who may be residing there in violation of law. (47 East 74th St. Corp. v Simon, 188 Misc 885; Revon Realty Corp. v Fixler, 66 NYS2d 30; Rasch, New York Landlord and Tenant [2d ed], § 1114.)
The use of the term "studio” in the lease, even if referable to residential space only as tenant contends and reference to gas for cooking do not vitiate the finding that tenant knew and willingly risked a determination of illegal use. Landlord did not warrant residential premises and a residential certificate of occupancy.
The defense that no rent is due because landlord did not have a residential certificate of occupancy is not applicable in the circumstances outlined here.
The second issue raised by the parties is what portion, if any, of the Con Ed electric charges tenants are responsible *311 for. Under the terms of the lease tenants are obligated to pay for electric current "consumed”. The building has a single meter and landlord seeks to apply a proportionate share of the total bill amongst the tenants. Landlord is billed by Con Ed at a commercial rate which includes current available as well as current consumed. There was no proof at trial of the portion of the bill applicable to current consumed and the portion applicable to current available. Any ambiguity in the lease must be charged against the draftsman, landlord; accordingly, tenant is responsible for current actually consumed, not for current available. That portion of landlord’s petition is denied without prejudice to a further trial as part of these proceedings or in a plenary suit to determine the actual or reasonably approximate amount of current consumed by tenants.
Judgment for landlord against tenant Robinson for $900 (rent, August through December, 1977 at $325 a month, $1,650, less a credit of $750 paid by tenant towards the Con Ed bill) and against tenant Hand for $1,750 (rent, July through December, 1977 at $325 a month, $1,950, less a credit of $200 paid by tenant towards the Con Ed bill).